**[ORAL ARGUMENT SCHEDULED FOR FEBRUARY 24, 2026]**

**Nos. 25-5122, 25-5123**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

CLIMATE UNITED FUND, ET AL.,

*Plaintiffs-Appellees,*

vs.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**EN BANC REPLY BRIEF OF DEFENDANT-APPELLANT
CITIBANK, N.A.**

K. Winn Allen, P.C.
  *Counsel of Record*
Aaron L. Nielson
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

February 17, 2026

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................2

I.     PLAINTIFFS MAY NOT PROCEED AGAINST CITIBANK ALONE. ...............................................................................................2

II.    CITIBANK COMPLIED WITH ITS CONTRACTS. .................................5

III.   THE REMAINING INJUNCTION FACTORS FAVOR CITIBANK. ........11

CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & E Television Networks, LLC v. Pivot Point Entm't, LLC*,
2013 WL 1245453 (S.D.N.Y. Mar. 27, 2013) ..................................................... 8

*Alcorn v. Wolfe*,
827 F. Supp. 47 (D.D.C. 1993) .......................................................................... 13

*Bank of New York v. F.D.I.C.*,
453 F. Supp. 2d 82 (D.D.C. 2006), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007) .............. 7

*Borg-Warner Protective Servs. Corp. v. E.E.O.C*,
245 F.3d 831 (D.C. Cir. 2001) .......................................................................... 13

*Crye Precision LLC v. Bennettsville Printing*,
2019 WL 6388636 (E.D.N.Y. Aug. 13, 2019) ................................................... 8

*Fed. Crop Ins. Corp. v. Merrill*,
332 U.S. 380 (1947) ............................................................................................ 8

*Franklin v. D.C.*,
163 F.3d 625 (D.C. Cir. 1998) .......................................................................... 10

*Globe Food Services Corp. v. Consolidated Edison Co. of New York, Inc.*,
584 N.Y.S.2d 820 (1st Dep't 1992) .................................................................... 8

*Lederman v. United States*,
131 F. Supp. 2d 46 (D.D.C. 2001) .................................................................... 13

*Long Side Ventures LLC v. Adarna Energy Corp.*,
2014 WL 4746026 (S.D.N.Y. Sept. 24, 2014) ................................................... 8

*Martin v. Fed. Bureau of Investigation*,
145 F.4th 1345 (D.C. Cir. 2025) ........................................................................ 3

*Matek Inc. v. Int'l Bus. Machines Corp.*,
2024 WL 663340 (D.D.C. Feb. 16, 2024) ......................................................... 7

*Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*,
 297 F. Supp. 2d 242 (D.D.C. 2004) ...................................................................12

*Norfolk S. Rwy. Co. v. Kirby*,
 543 U.S. 14 (2004)..............................................................................................11

*In re O.P.M. Data Sec. Breach Litig.*,
 928 F.3d 42 (D.C. Cir. 2019)................................................................................3

*Pine View Gardens, Inc. v. Mut. of Omaha Ins. Co.*,
 485 F.2d 1073 (D.C. Cir. 1973).............................................................................5

*TVT Recs. v. Island Def Jam Music Grp.*,
 412 F.3d 82 (2d Cir. 2005) ...................................................................................7

*United States v. Gonzales*,
 520 U.S. 1 (1997)................................................................................................11

*Waters v. Chaffin*,
 684 F.2d 833 (11th Cir. 1982) ............................................................................12

**Statutes**

28 U.S.C. § 1491(a)(1)................................................................................................4

**Other Authorities**

*Liability*, Black's Law Dictionary (3d ed. 1933).......................................................10

*Liability*, Black's Law Dictionary (12th ed. 2024)...................................................10

Restatement (Second) of Contracts § 202(2) (1981) .................................................6

## GLOSSARY

| Abbreviation/Acronym | Definition |
|---|---|
| ACA | Account Control Agreement |
| EPA | Environmental Protection Agency |
| EPA Opening Br. | EPA *En Banc* Opening Brief (Doc. #2153666) |
| FAA | Financial Agency Agreement |
| FBI | Federal Bureau of Investigation |
| Op. | Panel Decision, *Climate United Fund et al. v. Citibank, N.A. et al.*, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025) |
| Primary Grantee Br. | Primary Grantees' *En Banc* Answering Brief (Doc. #2157201) |
| Subgrantee Br. | State Banks' *En Banc* Answering Brief (Doc. #2157069) |
| Impact Finance Experts *Amicus* Br. | En Banc Brief of Impact Finance Experts as *Amicus Curiae* in Support of Appellees (Doc. #2158274) |

iv

## INTRODUCTION

This is a dispute between the government and its grant recipients. Citibank has been pulled into the fray, but it has no place in this litigation. Citibank's only goal is, and has always been, to fulfill its contractual obligations to both the Plaintiffs and the government and to comply with all court orders. In these circumstances, injunctive relief is neither permissible nor appropriate. Plaintiffs' own cursory arguments to the contrary confirm as much, for three key reasons.

*First*, at an absolute minimum, Plaintiffs may not proceed against Citibank alone. Nothing in law or logic permits Plaintiffs to proceed against the *agent* of the government where their claims against the federal government as *principal* have no likelihood of success. Because Citibank did nothing more than act at the behest and direction of the government, derivative sovereign immunity applies. To hold otherwise would permit plaintiffs to circumvent the government's limited waiver of sovereign immunity by suing private agents rather than the government itself. Moreover, as Citibank's opening brief explained, Plaintiffs forfeited any challenge to Citibank's derivative entitlement to relief by not addressing that holding in their petition for *en banc* rehearing. Plaintiffs say nothing in response.

*Second*, Plaintiffs cannot succeed on the merits of their contract claims against Citibank. Plaintiffs would have the Court ignore provisions of the FAA that bar Citibank from second-guessing the government's instructions. But the FAA and

1

ACAs must be read together because they refer to each other and concern the same subject and transactions. Nor does the FAA come as a surprise to Plaintiffs, who not only knew Citibank was operating as the government's agent, but also signed grant agreements expressly referring to both the FAA and the ACAs. Even putting the FAA aside, Plaintiffs' argument fails. Each ACA provides that "[t]he Bank shall not incur any liability for not performing any act or fulfilling any obligation" because of "any act of any governmental authority." JA74 § 6.b. Following directives of governmental authority is precisely what Citibank did.

*Third*, Plaintiffs' passing arguments about the remaining preliminary injunction factors are no better. Allowing litigation against Citibank for obeying federal instructions would harm the public interest by dissuading private financial institutions from serving as the government's agent, and Citibank's commitment to following this Court's orders as between the Plaintiffs and the government makes an injunction against Citibank superfluous. Accordingly, whatever the Court decides with respect to the government, the injunction against Citibank should be vacated.

## ARGUMENT

### I.    PLAINTIFFS MAY NOT PROCEED AGAINST CITIBANK ALONE.

The Court should reject Plaintiffs' request to "proceed independently against Citibank" if their claims against the government fail. Primary Grantee Br. 53-54. As an initial matter, the panel's determination that the "derivative injunction" against

2

Citibank necessarily falls with the injunction against the government is law of the case because Plaintiff failed to challenge it in their petitions for rehearing *en banc*. Op. 30; Citibank Opening Br. 13-14. Because Plaintiffs do not address that argument in their briefs to this Court, they have forfeited any opposition to it. *See, e.g.*, *Martin v. Fed. Bureau of Investigation*, 145 F.4th 1345, 1352 (D.C. Cir. 2025).

Even if the Court were to revisit Citibank's entitlement to derivative relief, the panel correctly concluded that if the injunction against the government is vacated, "the derivative injunction against Citibank must be vacated as well." Op. 30. The government agrees, EPA Opening Br. 43 n.6, and Plaintiffs' conclusory argument to the contrary lacks merit. Claims against a government agent like Citibank who did no more than obey the government's directions are barred by derivative sovereign immunity. *See, e.g.*, *In re O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019). Accordingly, if Plaintiffs are unlikely to prevail on their claims against the government (whether on the merits or under the Tucker Act), then they likewise are unlikely to prevail on their claims against Citibank.

It could not be otherwise. Derivative sovereign immunity stops plaintiffs from evading the government's sovereign immunity by suing the sovereign's agents rather than the sovereign directly. Here, Plaintiffs concede that Citibank did nothing more than comply with government instructions that Plaintiffs believe were not "lawful." Primary Grantee Br. 56 (quoting JA996). Plaintiffs' claims against Citibank thus

necessarily fall with their claims against the government about those instructions. No claim can stand against Citibank alone.

Plaintiffs offer a single argument in response: that Citibank purportedly is seeking "broader" immunity than the government. *Id.* 53-54 (emphasis omitted). They base this argument on the fact that Plaintiffs cannot sue Citibank in the Court of Federal Claims because that court's jurisdiction is limited to adjudicating claims "against the United States." 28 U.S.C. § 1491(a)(1). But that jurisdictional restriction does not eviscerate Citibank's derivative sovereign immunity from suit in the district court. If the government is immune from suit in the district court, then Citibank—who Plaintiffs sue simply for following the government's directives—is entitled to that *same* immunity. That the government waived its own immunity in a different forum is beside the point.

Plaintiffs fundamentally misunderstand derivative sovereign immunity. Should they prevail in the Court of Federal Claims against the government, Plaintiffs will receive full compensation. Congress's decision to exclude suits against government agents from that court's jurisdiction thus reinforces *Citibank's* point: there is no need for redundant litigation against a financial agent when aggrieved parties can seek and obtain full recovery against the government itself. By contrast, allowing private plaintiffs to maintain claims for specific performance against government agents (when such claims are barred against the government itself)

4

would impose a nonsensical exception to the careful balance that Congress struck in the Tucker Act. The rule that a plaintiff cannot "avoid the problems of sovereign immunity" by suing a government "agent" is necessary to safeguard sovereign immunity itself. *Pine View Gardens, Inc. v. Mut. of Omaha Ins. Co.*, 485 F.2d 1073, 1075 (D.C. Cir. 1973).

## II. CITIBANK COMPLIED WITH ITS CONTRACTS.

Regardless of what the Court decides as to Plaintiffs' claims against the government, Plaintiffs are not entitled to an injunction against Citibank because Citibank complied with the FAA and the ACAs. When the FBI urged Citibank to freeze funds in light of "credible information" of possible crimes, JA100, Citibank temporarily did so consistent with its obligation under the FAA to "act at all times in the best interests of the United States." JA2129 § 5.A. And when Treasury and EPA directed Citibank to pause disbursements, Citibank obeyed, consistent with its obligation to "comply with all lawful instructions or directions received from Treasury" and "implement account controls" imposed by EPA. *Id.* § 5.B.iv, JA2147 § I.B. Citibank's obligations under the ACAs must be interpreted in light of the FAA's broad fiduciary obligations: the ACAs acknowledge—and exist only by virtue of—Citibank's duties under the FAA, *see* JA71, JA2145 § I.A.1.i-ii; the FAA conditions Plaintiffs' access to account funds on the FAA's obligations, JA2145 § I.A.1.iv.; and the ACAs foreclose liability against Citibank for following the

5

government's instructions, JA73-74 § 6.b. Only by following its principal's directions could Citibank honor both the FAA and the ACAs.

Plaintiffs contend that "[t]he District Court found that Plaintiffs were likely to succeed on their contract claim against Citibank." Primary Grantee Br. 53. But as the panel explained, that is not true—"[t]he district court did not find that the grantees were likely to succeed on any of their independent claims against Citibank." Op. 30. Regardless, Plaintiffs' contract arguments uniformly fail.[1]

### 1. The FAA and ACAs must be read together.

At the outset, because the FAA dooms Plaintiffs' claims, they ask the Court to ignore it. In Plaintiffs' view, Citibank should have disregarded its obligations under the FAA, ignored that it was bound to act as the government's agent and fiduciary, and instead complied with Plaintiffs' disbursement requests under the ACAs—even though the government was ordering it not to.

Suffice it to say, Plaintiffs' view is not the law. Contracts executed concerning the same transactions and subject matter, like the FAA and ACAs, must be read together. *See, e.g.*, Restatement (Second) of Contracts § 202(2) (1981). Nor is this basic rule of contract law limited to "contemporaneous agreements signed by the

---

[1] The Subgrantee Plaintiffs offer no argument about Citibank at all, but instead "incorporate, [the] primary grantees' argument[] … that Citibank breached the account control agreements." Subgrantee Br. 14.

6

same parties." Primary Grantee Br. 55-56 (emphasis omitted). "Under New York law"—which Plaintiffs concede governs here—"documents must be read together, *even though they were executed on different dates and were not all between the same parties*, if the documents formed part of a single transaction and were designed to effectuate the same purpose." *Matek Inc. v. Int'l Bus. Machines Corp.*, 2024 WL 663340, at *3 n.3 (D.D.C. Feb. 16, 2024) (alterations adopted) (emphasis added) (quoting *Bank of New York v. F.D.I.C.*, 453 F. Supp. 2d 82, 99 (D.D.C. 2006), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007)); *see, e.g.*, *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 89-90 (2d Cir. 2005) (two contracts "were part of a single transaction intended to effectuate the same purpose" under New York law, even though "they were negotiated and signed at different times … and involved different parties").

That rule applies with particular force here, moreover, because (i) the ACAs acknowledge Citibank's status as "a financial agent of the United States," JA71; (ii) the Plaintiffs' grant agreements with the government reference both the FAA and the ACAs, *see, e.g.*, JA1076, JA1079, JA1137; and (iii) the FAA makes grantees' access to grant funds "subject to … the conditions and restrictions detailed in" the FAA, JA2145 § I.A.1.iv. Plaintiffs were fully aware that Citibank had entered, and would be constrained by, the FAA. And as a matter of agency law, "anyone entering into an arrangement with the Government takes the risk of having accurately

7

ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

Nor does it matter that the ACAs contain a merger clause. Merger clauses do not bar consideration of related, earlier agreements under New York law unless they say so "explicitly." *Long Side Ventures LLC v. Adarna Energy Corp.*, 2014 WL 4746026, at *6 (S.D.N.Y. Sept. 24, 2014) (quoting *A & E Television Networks, LLC v. Pivot Point Ent., LLC*, 2013 WL 1245453, at *10 (S.D.N.Y. Mar. 27, 2013)). Even "the phrase 'this contract shall replace all prior agreements'" is not enough "to supersede a particular earlier contract." *Id.* (quoting *Globe Food Servs. Corp. v. Consol. Edison Co. of New York, Inc.*, 584 N.Y.S.2d 820, 821 (1st Dep't 1992)). New York courts thus "find it improvident to treat the merger clause as a blanket extinguishment of prior contractual provisions absent *definitive* language to the contrary." *Crye Precision LLC v. Bennettsville Printing*, 2019 WL 6388636, at *6 (E.D.N.Y. Aug. 13, 2019) (emphasis added). Yet here, far from including "definitive language" extinguishing Citibank's obligations under the FAA, *id.*, the very first page of the ACAs expressly states that Citibank acts as the government's "financial agent," JA71.

### 2. Citibank complied with the FAA.

Plaintiffs also attempt to isolate the FAA's obligation that Citibank comply with Treasury's "lawful instructions or directions," which Plaintiffs argue did not

8

require Citibank to follow FBI "recommendations" or Treasury instructions that were "not lawful." Primary Grantee Br. 56. But Citibank's fiduciary duties also include a general "fiduciary duty of loyalty and fair dealing to the United States," a duty "to act at all times in the best interests of the United States when carrying out its responsibilities under th[e] FAA and in all matters connected with th[e] agency relationship," a duty "to construe the terms of th[e] FAA and any related instruction from Treasury in a reasonable manner to serve the purposes and interests of the United States," and a duty to "implement account controls" imposed by EPA. JA2129 §§ 5.A, 5.B.ii, 5.B.iv, JA2147 § I.B. Citibank's sweeping fiduciary duties do not empower it to flout federal law enforcement, nor to adopt grantees' assessment of the legality of the government's instructions.

That latter point bears special emphasis. Plaintiffs point to no authority allowing Citibank to second-guess the lawfulness of instructions from its principal, the United States government. Plaintiffs themselves have acknowledged "that it's difficult for Citibank to say no to the FBI when the FBI recommends to freeze someone's funds, even without a court order." JA181:15-21. In fact, the ACAs that Plaintiffs claim Citibank breached "entitle[]" Citibank "to rely upon any instruction, notice, or request" it receives "without being required to determine the authenticity or validity thereof, or the truth or accuracy of the information stated therein." JA74 § 6.b. The district court thus correctly found that "Citibank performed its obligations

9

under the FAA in accordance with its responsibilities as a financial agent of the United States." JA996.

### 3. The ACAs bar Plaintiffs' claims against Citibank.

In all events, Plaintiffs' claims are barred by the ACAs themselves. Plaintiffs say "Citibank may refuse" to distribute funds "*only* if the secured party under that ACA exercises its secured-party right to issue a Notice of Exclusive Control." Primary Grantee Br. 54. But Section 6(b) of the ACAs unambiguously forecloses "any liability" for Citibank "not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation … any act of any governmental authority … )." JA74 § 6.b. Plaintiffs' argument flatly conflicts with Section 6(b).

Faced with Section 6(b), Plaintiffs insist that their request for "forward-looking relief" does "not seek[] to hold Citibank liable." Primary Grantee Br. 54. But that argument is self-defeating: "Without liability there would be no basis for injunctive relief." *Franklin v. D.C.*, 163 F.3d 625, 630 (D.C. Cir. 1998). Regardless, "liability" means "[t]he quality, state, or condition of being legally obligated or accountable." *Liability*, Black's Law Dictionary (12th ed. 2024); *see also Liability*, Black's Law Dictionary (3d ed. 1933) ("The state of being bound or obligated in law or justice to *do*, pay, or make good something." (emphasis added)). Being obligated to comply with an injunction easily falls within the ACA's bar on liability.

10

Plaintiffs' argument that Section 6(b) does not cover "EPA's mere suggestion" to halt disbursements, Primary Grantee Br. 55, moreover, ignores both what the ACAs say and undisputed facts. Section 6(b) excuses "any" of Citibank's ACA obligations based on "any" act of the government "without limitation." JA74 § 6.b. "[T]he word 'any' has an expansive meaning," *United States v. Gonzales*, 520 U.S. 1, 5 (1997), and requires reading a "liability limitation broadly," *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31-32 (2004). Regardless, this case is not about "suggestions"—the government *told* Citibank what to do. There is no way to read "Treasury is instructing Citibank, in its capacity as fiduciary, to comply with EPA's instructions" as anything but a command. JA68. Even Plaintiffs concede that "Treasury eventually did send instructions to Citibank." Primary Grantee Br. 56.[2] Those directions were acts of a governmental authority beyond Citibank's control, and Section 6(b) bars liability against Citibank for following them.

### III. THE REMAINING INJUNCTION FACTORS FAVOR CITIBANK.

Finally, Plaintiffs also cannot satisfy their burden with respect to the remaining preliminary injunction elements, and the district court never held otherwise. *See* JA996-997 (no analysis on those factors as to Citibank). There is no

---

[2] Plaintiffs' concession about Treasury's instructions renders irrelevant any argument that Citibank should have brushed aside the FBI's warning. After all, Treasury's and EPA's directives came later in time and remain in effect.

11

reason to impose an injunction against Citibank for doing what the government directed given that Citibank will do whatever this court ultimately decides.

Plaintiffs have no real answer. They say a "prospective injunction" would not dissuade private companies like Citibank from contracting with the government to serve as agents. Primary Grantee Br. 57. But the threat of litigation and an injunction for simply following government orders will surely make any prospective agent think twice. Impeding the government's ability to secure financial intermediaries for grant programs in this way would disrupt the public's "strong interest in the effective and transparent administration of federal grant programs." *Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 251 (D.D.C. 2004); *accord Waters v. Chaffin*, 684 F.2d 833, 838 n.11 (11th Cir. 1982) ("[T]he public has a strong interest in the efficient delivery of governmental services."). It also would hinder the leveraging of private capital that Plaintiffs (and their *amici*) urge is so critical to the success of the GGRF program. *See, e.g.*, Primary Grantee Br. 3-4; Subgrantee Br. 5-6; Impact Finance Experts Amicus Br. 1-15.

Plaintiffs, by contrast, have no interest in a superfluous injunction. Their own argument proves why: enjoining Citibank is necessary, they say, because Citibank abided by the FBI's "recommendations" to freeze funds. Primary Grantee Br. 57. But the fact that Citibank follows government instructions shows that a separate injunction serves no purpose. An injunction barring the government from "causing

12

Defendant Citibank to deny, obstruct, delay, or otherwise limit [Plaintiffs'] access to funds" would provide Plaintiffs complete relief. JA962. It thus "is entirely unnecessary" to enjoin Citibank, too. *Borg-Warner Protective Servs. Corp. v. E.E.O.C.*, 245 F.3d 831, 834 (D.C. Cir. 2001); *see Lederman v. United States*, 131 F. Supp. 2d 46, 63 n.15 (D.D.C. 2001) (injunction against two sets of defendants "unnecessary" because injunction against "federal defendants" would remedy alleged harm); *Alcorn v. Wolfe*, 827 F. Supp. 47, 53-54 (D.D.C. 1993) ("[B]ecause defendant's unequivocal guarantee makes an injunction unnecessary, plaintiff's request for injunctive relief is denied."). At bottom, the dispute here is between Plaintiffs and the government—not Citibank.

## CONCLUSION

This Court should vacate the preliminary injunction with respect to Citibank.

Dated: February 17, 2026

Respectfully submitted,

*/s/ K. Winn Allen*
K. Winn Allen, P.C.
  *Counsel of Record*
Aaron L. Nielson
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: 202.389.5078
winn.allen@kirkland.com

*Attorney For Defendant-Appellant Citibank, N.A.*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,896 words, excluding the parts of the brief exempted by Fed. R. App. P 32(f), as counted using the word-count function on Microsoft Word software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

February 17, 2026                               */s/ K. Winn Allen*
                                                K. Winn Allen

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

February 17, 2026                             */s/ K. Winn Allen*
                                              K. Winn Allen